IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH NEXTDOOR ACCOUNT FOR USERNAME 'JOE DAVID' THAT IS STORED AT PREMISES CONTROLLED BY NEXTDOOR, INC. | Case No. 7:22mj65<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Scott M. Long, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application for a search warrant for information associated with a certain Nextdoor account that is stored at premises owned, maintained, controlled, or operated by Nextdoor, Inc. ("Nextdoor"), a company headquartered in San Franciso, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Nextdoor to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the account.

2.  I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been so employed since 2002. I am currently assigned to the FBI Richmond, Virginia (VA), Field Office, Roanoke Resident Agency. As part of my duties as an FBI SA, I have investigated criminal violations relating to transnational organized crime, complex financial crime and securities fraud, civil rights, human trafficking, violent gangs, drugs, and international terrorism. I have received

training and gained experience in conducting investigations, interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer crimes, computer evidence identification, child pornography identification, computer evidence seizure and processing, and various other criminal laws and procedures.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience I am aware that 18 U.S.C. § 2261A(2) (Stalking) makes it a crime for whoever, with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that places that person in reasonable fear of the death of or serious bodily injury . . . or causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2261A(2) have been committed by Joe Miller GRUBB III. There is also probable cause to search the information described in Attachment A for evidence of these crimes as described in Attachment B.

**PROBABLE CAUSE**

5. On October 11, 2021, an email was sent from the email address joegrubb5757@gmail.com to five employees of American National Bank (AMNB) with the subject line: "█████ sexual abuse" at approximately 11:32 P,M EST. The email stated: "See pics.

Video to follow. Think people want to invest with you now. Respectfully, Joe M. Grubb joegrubb5757@gmail.com" Inserted in the body of the email were three photographs, the first of which was a list of allegations against ▮ (see below photo A)



(Photo A - first photograph in the email dated 10/11/2021)

The second photograph in the email was of the Captain America shield logo, and the third photograph was of GRUBB standing next to the banner above (see below photo B).



(Photo B - third photograph in the email dated 10/11/2021)

6. Investigation identified WITNESS 1, who identified GRUBB as the individual pictured in Photo B above, and confirmed GRUBB's use of the email address joegrubb5757@gmail.com WITNESS 1 also stated GRUBB was in Manila, Philippines at the time these photographs were taken and the emails set forth above were sent.

7. Additional emails were sent on the same day by GRUBB to several AMNB employees with subject lines that included," Video sound clips ▬ "Video ▬ "Sound/have over 300 hours of this creep.", and ▬ sound". These emails contained video attachments, one of which showed an individual walking around a room, opening an exterior door, and then the sound of street noise can be heard. There is no discernable, audible conversation in the video.

8. ▬ is a ▬ at AMNB and lives at the address listed in the photos posted by GRUBB. This residence is adjacent to GRUBB's U.S. residence address in Roanoke, Virginia. ▬ knows GRUBB from occasional, cordial interactions as neighbors. ▬ cannot recall any negative interactions with GRUBB in the past. ▬'s direct supervisor at AMNB and the bank's Chief Financial Officer were recipients of GRUBB's emails.

9. On October 17, 2021, a photograph similar to Photos A and B, above, was posted under the name Joe Bowie on Facebook (see below Screenshot C). WITNESS 1 stated that Joe Bowie is an alias that GRUBB uses for posting on Facebook. Facebook is an electronic communiction service and facility of interstate commerce.



Screenshot C Grubb post as Joe Bowie on Facebook on 10/17/2021.

10. On October 19, 2021, ███ the spouse of ███ saw a post on the social media website Nextdoor containing three photographs, a picture of ███ the banner in Photo A and a picture similar to the Facebook post shown in Screenshot C. Nextdoor is an electronic communication service and facility of interstate commerce. The Nextdoor post was placed in the general section of the Greater Deyerle neighborhood page, the neighborhood ███ lives in, and titled "Pedophile ███ The post ends with "CPT Joe Grubb". The post

6

was made on October 11, 2021 under the name Joe David. WITNESS 1 stated this account belonged to GRUBB. Below is a screen capture of part of the Nextdoor post:



Screenshot C of Nextdoor post.

11.     On or about October 25, 2021, five branches of AMNB received letters postmarked October 23, 2021 with a return address of or similar to "CPT Joe Grubb ▮▮▮ Roanoke, VA 24018". These letters contained a sheet of paper with the same or similar picture referenced above in Photo A.

12.     Further investigation identified WITNESS 2, who approximately a week prior to October 23, 2021 received a package from GRUBB that contained numerous letters. GRUBB asked WITNESS 2 to mail the letters for him in the United States. WITNESS 2, who lives in Maryland, mailed the letters for GRUBB without any knowledge of what was inside.

13. On or about October 30, 2021, twenty letters either postmarked October 27, 2021 or missing postmarks were either delivered or scheduled to be delivered to neighbors of ▇. These letters were the same as or similar to the letters sent to AMNB.

14. On or about October 31, 2021, GRUBB told WITNESS 1 that if he ever came back to the United States, he would kill ▇. GRUBB medically retired from the U.S. Army in 2016. GRUBB was diagnosed with Post Traumatic Stress Disorder (PTSD) and with bi-polar disorder while at Fort Knox in approximately 2015.

15. ▇ have endured substantial emotional distress due to the conduct of GRUBB and they fear for their lives. They are worried about individuals who may believe GRUBB's social media posts or letters and act on his statement from Photo A "What you gonna do?" They also feared what GRUBB might do if he returned to the United States.

16. On or about December 22, 2021, GRUBB sent over sixty similar letters via FedEx to numerous individuals, businesses, government offices and other entities to include the Hell's Angels Motorcycle Club.

17. In one of the letters sent via FedEx on or about December 22, 2021 addressed to a business in the Roanoke, Virginia area, GRUBB threatens to kill one of the employees of the business.

18. On January 4, 2022, the Philippine Bureau of Immigration arrested GRUBB.

19. A preservation request was sent on June 7, 2022 and Nextdoor reference number 22979 was assigned to this matter.

## BACKGROUND CONCERNING NEXTDOOR

20. Nextdoor is a free-access social networking website that can be accessed at http://www.nextdoor.com. Nextdoor users can use their accounts to share communications, news, photographs, videos, and other information with other Nextdoor users, and sometimes with the general public.

21. Nextdoor allows its users to create their own profile, which can include a short biography, a photo of themselves, and other information. Nextdoor users join a neighborhood to connect and interact with other users who are members of the same neighborhood and/or surrounding neighborhoods. Nextdoor users use these neighborhood groups to meet, gather, exchange and share information. Users also may reply to posts and private message other users. Private messages allow a user to connect directly with an individual user.

22. Upon creating a Nextdoor account, a Nextdoor user must provide their name, address, phone number, profile photo, email address, and similar information. This information is collected and maintained by Nextdoor. Nextdoor users are assigned to a particular neighborhood based upon their address.

23. Nextdoor also collects information on the particular devices used to access Nextdoor. In particular, Nextdoor may record "device identifiers," which includes data files and other information that may identify the particular electronic device that was used to access Nextdoor.

24. Social networking providers like Nextdoor typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Nextdoor users may

communicate directly with Nextdoor about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Nextdoor typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

25. As explained herein, information stored in connection with a Nextdoor account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Nextdoor user's IP log, stored electronic communications, and other data retained by Nextdoor, can indicate who has used or controlled the Nextdoor account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Nextdoor account at a relevant time. Further, Nextdoor account activity can show how and when the account was accessed or used. For example, as described herein, Nextdoor logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Nextdoor access, use, and events relating to the crime under investigation. Additionally, location information retained by Nextdoor may tend to either inculpate or exculpate the Nextdoor account owner. Last,

Nextdoor account activity may provide relevant insight into the Nextdoor account owner's state of mind as it relates to the offense under investigation. For example, information on the Nextdoor account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

26. Therefore, the servers of Nextdoor are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Nextdoor, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

27. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Nextdoor to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

28. Based on the foregoing, I request that the Court issue the proposed search warrant.

29. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Nextdoor. Because the warrant will be served on Nextdoor, who will then

compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

30. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

Respectfully submitted,

/s/ Scott M. Long
Scott M. Long
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on June 30, 2022

*Robert S. Ballou*
The Honorable Robert S. Ballou
United States Magistrate Judge

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with Nextdoor account username 'Joe David', who posted to the General Section of the Greater Deyerle neighborhood located in Roanoke, Virginia on October 11, 2021, a post titled 'Pedophile ███████' that is stored at premises owned, maintained, controlled, or operated by Nextdoor, Inc., a company headquartered in San Francisco, California.

# ATTACHMENT B

## Particular Things to be Seized

I.  **Information to be disclosed by Nextdoor Inc. ("Nextdoor")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Nextdoor, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Nextdoor, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Nextdoor is required to disclose the following information to the government for each username listed in Attachment A:

(a) All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers associated with the account.

(b) All methods of payment, including credit cards.

(c) All activity logs for the account and all other documents showing the user's posts and other Nextdoor activities from October 1, 2021 to January 4, 2022.

(d) All photos and videos uploaded by that user and all photos and videos uploaded by any user that have that user tagged in them from October 1, 2021 to January 4, 2022 including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(e) All profile information; videos, photographs, articles, and other items; future and past event postings; comments and information about the user's access and use of Nextdoor applications;

(f) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(g) All other records and contents of communications and messages made or received by the user from October 1, 2021 to January 4, 2022, including all Public message activity, private messages, chat history;

(h) All data and information that has been deleted by the user from October 1, 2021 to January 4, 2022.

(i) All location information;

(j) All IP logs, including all records of the IP addresses that logged into the account;

(k) All records of Nextdoor searches performed by the account from October 1, 2021 to January 4, 2022;

(l) The types of service utilized by the user;

(m) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(n) All privacy settings and other account settings, including privacy settings for individual Nextdoor posts and activities, and all records showing which Nextdoor users have been blocked by the account;

(o) All records pertaining to communications between Nextdoor and any person regarding the user or the user's Nextdoor account, including contacts with support services and records of actions taken.

Nextdoor is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

**II.    Information to be seized by the government**

All information described above in Section I that constitutes evidence and instrumentalities of violations of 18 U.S.C. § 2261A(2) (Stalking) since October 1, 2021, involving the user identified on Attachment A, information pertaining to the following matters:

(a) Communications regarding threats, intimidation, harassment and violence against ▮▮. or any other person.

(b) Public or private posts or comments containing threatening or harassing language to or about ▮▮ or any other person.

(c) Evidence indicating how and when the Nextdoor account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Nextdoor account owner;

(d) Evidence indicating the Nextdoor account owner's state of mind as it relates to the crime under investigation;

(e) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed

electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Nextdoor, Inc. ("Nextdoor"), and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Nextdoor. The attached records consist of _____ (pages/CDs/megabytes). I further state that:

    a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Nextdoor, and they were made by Nextdoor as a regular practice; and

    b. such records were generated by Nextdoor's electronic process or system that produces an accurate result, to wit:

        1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Nextdoor in a manner to ensure that they are true duplicates of the original records; and

        2. the process or system is regularly verified by Nextdoor, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                                Signature